UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Optimumedicine, LLC, Plaintiff v. Hightail Air Charter, LLC, et al., Defendants | Case No. 2:26-cv-00191-CDS-BNW **Omnibus Order Resolving Several Motions and Discharging Show Cause Order** [ECF Nos. 22, 29, 38, 51, 52, 54, 56, 57, 67] |

This case arises from business dealings between an ambulatory medical services company and several airplane owners and lessors. First am. compl., ECF No. 20. Plaintiff Optimumedicine ("Optimum") is an ambulatory medical services provider; the defendants own and lease airplanes to individuals, and they engage in the medical transport business. *Id.* at ¶¶ 11–12. Optimum filed a motion to compel (ECF No. 22) and a motion to stay the case (ECF No. 29). Defendant Scott Saldana filed a motion to dismiss the amended complaint. ECF No. 38. Defendant Hightail Air Charter filed a motion for preliminary injunction (ECF No. 51), a motion for temporary restraining order (ECF No. 52), a motion for clarification (ECF No. 56), and a motion for reconsideration (ECF No. 57). Several defendants move to dismiss the first amended counterclaim (ECF No. 54).[1]

For the reasons set forth below, the motions to compel and stay the case, Saldana's motion to dismiss, the motion for a temporary restraining order, and motion for a preliminary injunction (ECF Nos. 22, 29, 38, 51, 52) are denied, the motion to dismiss first amended counterclaim (ECF No. 54) is granted in part, the motions for reconsideration (ECF Nos. 56, 57) are granted, and the show cause order (ECF No. 67) is discharged.

[1] The moving parties include Optimum, Devon Eisma, Owen McKeany, and Jonathan Roasti.

## I. Background[2]

The parties originally entered into business dealings when the defendants leased a medical bed from Optimum. ECF No. 20 at ¶ 14. The scope of their business relationship grew when they entered into an agreement whereby Optimum leased Spectrum Aeromedical Stretcher to the defendants for medical flights. *Id.* at ¶ 15. Under that agreement, Optimum was entitled to 50 percent of all revenue derived from air ambulance services rendered using the leased medical bed. *Id.* at ¶ 16. But the defendants allegedly breached the agreement by concealing that revenue and failing to fully pay Optimum. *Id.*

On January 22, 2026, Optimum filed its complaint in Nevada state court. Compl., ECF No. 1-3. Five days later, Hightail removed the action to this court. Pet., ECF No. 1. On February 6th, Hightail filed an answer and counterclaims. Answer, ECF No. 4. Six days later, Saldana moved to dismiss the original complaint for lack of personal jurisdiction. Mot. to dismiss, ECF No. 9.

On February 26th, Optimum filed its first amended complaint. ECF 20. Therein, Optimum asserts several causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) an alternative claim for unjust enrichment; (4) fraud in the inducement; (5) violation of NRS 225.084 for fraudulent filings with the Secretary of State; (6) negligent misrepresentation; (7) alter ego; (8) intentional interference with business and contractual relations; (9) conversion; (10) misappropriation of trade secrets against Saldana; and (11) injunctive relief.

When the first amended complaint was filed, Optimum had not filed an opposition to Saldana's motion to dismiss. So the court denied the motion as moot, explaining that "an amended complaint supersedes the original complaint in its entirety." Min. order, ECF No. 27. On March 12th, Hightail answered the first amended complaint and refiled its original

[2] Unless otherwise noted, the court only cites to Optimum's amended complaint (ECF No. 20) to provide context to this action, not to indicate a finding of fact.

counterclaims. ECF No. 34. In footnote 1 to the counterclaims, Hightail explained that it had "previously filed these counterclaims" and "attaches them again here to avoid any doubt that it continues to pursue the[m]." *Id.* at 18 n.1.

On March 16th, Optimum moved to dismiss Hightail's original counterclaims. Mot. dismiss, ECF No. 41. Hightail timely filed its answer to Optimum's first amended complaint and first amendment to its counterclaims on March 30th. Answer, ECF No. 49. On April 13, 2026, Optimum filed a new motion to dismiss directed at Hightail's first amended counterclaims. Mot. dismiss, ECF No. 54. On April 14, 2026, the court granted Optimum's March 16th motion to dismiss as unopposed. Order, ECF No. 55. The next day, Hightail filed motions for reconsideration and clarification. Mots., ECF Nos. 56, 57. Those motions are fully briefed. Resp., ECF No. 63; Reply, ECF No. 66.

On July 9, 2026, the court ordered the defendants to show cause as to whether the amount in controversy was met. Order, ECF No. 67. The defendants timely responded. Resp., ECF No. 68.

## II. The show cause order is discharged.

The show-cause order directed the defendants to show that their removal based on diversity jurisdiction was proper. ECF No. 67. Specifically, it directed the defendants to show that the $75,000.00 amount in controversy was met. *See id.*; *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) ("Where, as here, it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold."). The defendants timely filed a response to the show cause order. ECF No. 68. Upon review of their response, I find that they have met their burden of showing that the amount in controversy exceeds the jurisdictional threshold. Thus, the show-cause order is discharged.

## III. Saldana's motion to dismiss (ECF No. 38) is denied.

### A. Legal standard

The Federal Rules of Civil Procedure (FRCP) require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

**B. Discussion**

Saldana moves to dismiss the amended complaint for lack of personal jurisdiction. ECF No. 38. To determine whether specific jurisdiction exists over a defendant, the Ninth Circuit employs a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Here, all three prongs are met. The amended complaint states that Optimum is a Nevada LLC that does business in Nevada, while Saldana is a resident of Illinois who does business in Nevada. ECF No. 20 at ¶ 6. It further alleges that Saldana "is the owner, Chief Executive Officer, and alter ego of the entity Defendants, Hightail Air Charter, LLC, Chronos Air Group, LLC, and Chronos Air MRO, LLC." *Id.* at ¶ 13. All these companies allegedly do business in Nevada. *See id.* at ¶¶ 2–5. Specifically, the amended complaint alleges that "HighTail and Chronos, under the direction of Saldana, had been providing Optimum's confidential information to at least one third party to create a new business enterprise." *Id.* at ¶ 24. It also alleges that the "First Amendment to the Mutual Services Agreement, despite being purportedly by and between Optimum and Defendant Hightail, dealt specifically with Defendant 'Scott Saldana' or 'a trust for which Scott Saldana is a beneficiary.'" *Id.* at ¶ 31. And it further alleges Saldana's personal involvement in the underlying events, including phone calls he made, Med Beds he possessed, partnerships he orchestrated, air ambulance flights he operated, and threats he made. *Id.* at ¶¶ 41, 42, 48, 49, 63. These allegations are sufficient to show that Saldana purposefully directed

activities and consummated a transaction with a resident (Optimum) of the forum state (Nevada), so the first prong is met.

The second prong is also met because the claims asserted against Saldana arise from or relate to his forum-related activities. For example, the claims arise from the allegedly breached Mutual Services Agreement, which, "despite being purportedly by and between Optimum and Defendant Hightail, dealt specifically with Defendant 'Scott Saldana' or 'a trust for which Scott Saldana is a beneficiary.'" ECF No. 20 at ¶ 31. This shows a connection between Saldana, the underlying events, and the State of Nevada that is sufficient for purposes of specific jurisdiction.

Finally, the third prong is met because exercising jurisdiction over Saldana comports with fair play and substantial justice. The allegations indicate that Saldana was directly involved and the transactions and events give rise to Optimum's claims. And because Optimum is a Nevada company who was on the other end of these transactions and involved in these events, Saldana has sufficient contacts for this court to have specific jurisdiction over him.

## IV. Optimum's motions to compel arbitration (ECF No. 22) and to stay the case (ECF No. 29) are denied.

### A. Legal standard

"There is a strong presumption in favor of arbitrating a dispute where a valid and enforceable arbitration agreement exists between the parties." *SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022) (first citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); and then citing *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 929 P.2d 954, 957 (Nev. 1996)). "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Int'l Ass'n of Firefighters*, *Local No. 1285*, 929 P.2d at 957. "Nevada has a 'fundamental policy favoring the enforceability of arbitration agreements,' and [courts] 'liberally construe arbitration clauses in favor of granting arbitration.'" *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) (quoting *Tallman v. Eighth Jud. Dist. Court*, 359 P.3d 113, 118–19 (Nev. 2015)).

"Where the Federal Arbitration Agreement (FAA), 9 U.S.C. § 1-16, governs an arbitration agreement, state courts are compelled to follow that act and any federal law construing it." *Royz*, 517 P.3d at 907. "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho. Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *Rep. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)); *see also Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (stating that the party seeking to compel arbitration has the burden to show both elements) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). If the answer to both inquiries is yes, then the court must enforce the arbitration agreement's terms. *Id.* Courts are guided by a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

**B. Discussion**

Here, Optimum shows both *Chiron* elements. But, as explained below, the arbitration agreement is still unenforceable.

First, section 5 of the Mutual Services Agreement (MSA) contains a valid, written agreement to arbitrate. That arbitration clause reads as follows:

> **5. ARBITRATION.** Any non-personnel controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The losing party in any arbitration award shall pay the reasonable legal fees of the prevailing party.

MSA, ECF No. 22-1, Pl.'s Ex. 1, § 5. Saldana signed the MSA as the manager of Chronos, and Devon Eisma signed the MSA as CEO of Optimum. Further, McKeany and Rosati are Optimum's employees. These facts are noteworthy because there are claims that the individual parties are the alter egos of the corporate parties in both the amended complaint and counterclaim. Thus, the first prong is met.

Second, the agreement to arbitrate encompasses the dispute at issue. The plaintiff incorrectly asserts that "rather than having the court determine arbitrability, . . . 'these gateway issues can be expressly delegated to the arbitrator where "the parties *clearly and unmistakably* provide otherwise."'" ECF No. 22 at 8 (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). This assertion mischaracterizes *Brennan*, where the Ninth Circuit held that courts should not delegate the question of arbitrability to the arbitrator unless there is clear and unmistakable evidence that the parties agreed to do so. *See Brennan*, 796 F.3d at 1130. The plaintiff has failed to show that such evidence is present here. Even so, I find that the agreement to arbitrate encompasses the claims here. The MSA's arbitration clause broadly applies to "[a]ny non-personnel controversy or claim arising out of or relating to" the MSA. Its broad scope therefore encompasses the pending claims and counterclaims, as they all center on the parties' contractual relationship with one another. Therefore, the second prong is met.

However, the arbitration agreement is not enforceable here because Optimum waived its right to exercise it. "[W]aiver is a unilateral concept" that "looks only to the acts of" the party seeking to compel arbitration. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). "[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Id.* Courts routinely find that both prongs are met where a party opts to initiate litigation rather than arbitration. *See, e.g.*, *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002); *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756, 759 (9th Cir. 1988).

Such is the case here. Optimum waived its right to exercise the arbitration agreement when it affirmatively represented in its complaint that the action is "EXEMPT FROM ARBITRATION." ECF No. 35 at 2. That is, by filing its complaint in state court and stating that the action is exempt from arbitration, Optimum met both *Hill* prongs and, in turn, waived its contractual right to arbitration. Consequently, Optimum motions to compel arbitration and to stay this case are denied.

**V. Hightail's motions for clarification and reconsideration (ECF No. 56, 57) are granted.**

Under FRCP 59(e), "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (citing *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)); *see also* LR 59-1(a) (noting that "[a] party seeking reconsideration under this rule must state with particularity the points of law or fact that the court has overlooked or misunderstood").

Here, Hightail seeks clarification or reconsideration of this court's order granting Optimum's March 16, 2026 motion to dismiss as unopposed. It contends that its amended counterclaims superseded the original counterclaims and mooted the motion to dismiss, and that Local Rule 7-2 cannot override FRCP 15. *See* ECF No. 56 at 3–5.

Hightail is correct on both fronts. In *Ramirez v. County of San Bernardino*, 806 F.3d 1002 (9th Cir. 2015), the Ninth Circuit held that timely filing an amended complaint moots the operative complaint and any pending motions to dismiss targeting it. The Ninth Circuit also held that when local rules and federal rules conflict, the federal rule controls. *Id.* at 1008.

Applying that holding here, the litigation timeline is as follows:

| Date | Event | ECF No. |
|---|---|---|
| 1/22/2026 | Optimum files complaint in state court. | ECF No. 1-3 |
| 1/27/2026 | Hightail removes case to federal court. | ECF No. 1 |
| 2/6/2026 | Hightail files answer to Optimum's complaint (ECF No. 1-3), which includes counterclaims against Optimum and a third-party complaint. | ECF No. 4. |
| 2/26/2026 | Optimum files first amended complaint (FAC). | ECF No. 20 |
| 3/12/2026 | Hightail files answer to Optimum's FAC and attaches the previously filed counterclaims (ECF No. 4) to "avoid any doubt that it continues to pursue these claims." | ECF No. 34 |
| 3/16/2026 | Optimum files motion to dismiss Hightail's answer (ECF No. 34) to the FAC, including Hightail's counterclaims and third-party complaint. | ECF No. 41 |
| 3/30/2026 | Hightail files another answer to Optimum's FAC, asserting amended counterclaims. **This moots the motion to dismiss (ECF No. 41).** | ECF No. 49 |
| 4/13/2026 | Optimum files a motion to dismiss the amended counterclaims contained in the second answer (ECF No. 49). | ECF No. 54 |
| 4/14/2026 | Court issues order granting Optimum's first motion to dismiss (ECF No. 41) as unopposed. **This order erroneously ruled on a moot motion (ECF No. 41).** | ECF No. 55 |
| 4/15/2026 | Hightail files motions for clarification or reconsideration of the April 13th order (ECF No. 55). | ECF Nos. 56, 57 |

Because the second answer (ECF No. 49) mooted the first motion to dismiss (ECF No. 41), the court's order granting Optimum's first motion to dismiss as unopposed was erroneous.[3] As such, the court grants the motions for reconsideration (ECF Nos. 56, 57) and vacates the

[3] The court notes that Hightail could have prevented this hiccup in the litigation proceedings by simply responding to the first motion to dismiss and explaining that ECF No. 49 renders the motion moot.

prior order (ECF No. 55). And because the amended counterclaims moot the original counterclaims, the motion to dismiss the original counterclaims (ECF No. 41) is denied as moot.

## VI. Counterdefendants' motion to dismiss (ECF No. 54) is granted in part.

Hightail brings eight claims: (1) alter ego; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) fraud in the inducement / fraud; (6) declaratory judgment; (7) accounting; and (8) conversion. In the face of Optimum's[4] motion to dismiss, I find that Hightail fails to state a claim for declaratory judgment, accounting, and conversion.

### A. Hightail sufficiently states an alter ego claim.

In Nevada, "[a] person acts as the alter ego of a limited-liability company only if: (a) The limited-liability company is influenced and governed by the person; (b) There is such unity of interest and ownership that the limited-liability company and the person are inseparable from each other; and (c) Adherence to the notion of the limited-liability company being an entity separate from the person would sanction fraud or promote manifest injustice." NRS 86.376.2. "The following factors, though not conclusive, may indicate the existence of an alter ego relationship: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *Ene v. Graham*, 546 P.3d 1232, 1236–37 (Nev. 2024) (citation modified).

Here, when reviewing the allegations in the light most favorable to Hightail, I find that its alter ego claim sufficiently states a claim for relief. Optimum argues that the alter ego allegations are mere legal conclusions not based on fact. But I find that Hightail incorporates sufficient factual allegations to support its alter ego claim. *See, e.g.*, ECF No. 49 at ¶ 56 (explaining the individual counterdefendants' roles at Optimum and the authority they exerted under Optimum's operating agreement); *id.* at ¶¶ 58–60 (detailing Optimum's

[4] The motion to dismiss was brought by Optimum, Devon Eisma, Owen McKeany, and Jonathan Rosati. However, for the sake of brevity, I refer to these parties collectively as "Optimum." I also refer to Eisma, McKeany, and Rosati collectively as "individual counterdefendants."

undercapitalization). Though the allegations do not categorically establish alter ego liability, they are sufficient to survive the motion to dismiss.

**B. Hightail sufficiently states a claim for breach of contract.**

Under Nevada law, "the plaintiff in a breach of contract action must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (citation modified). As for the first element, a valid contract requires "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." *Id.*

Here, Optimum does not dispute that Hightail sufficiently plead all three elements. Rather, it argues that the breach of contract claim is an impermissible "shotgun pleading" that does not identify which parties breached which contracts. But footnote 6 of the amended counterclaim undercuts this argument. That footnote explains that the breach-of-contract claim is brought against all counterdefendants because Hightail is suing Optimum under an alter ego theory of liability, such that the individual counterdefendants breached the contract in the same manner. Stated otherwise, because Hightail alleges alter ego liability, the references to "Optimum" is a collective reference to both Optimum and the individual counterdefendants. Accordingly, when viewing the amended counterclaim's allegations in the light most favorable to Hightail, I find that Hightail states a claim for relief sufficient to survive the motion to dismiss.

**C. Hightail sufficiently states a claim for breach of the implied covenant of good faith and fair dealing.**

"It is well established within Nevada that every contract imposes upon the contracting parties the duty of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1209 (Nev. 1993). "Where the terms of a contract are literally complied with but one party to the contract deliberately [contravenes] the intention and spirit of the contract, that party can

incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991). "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Jimenez v. GEICO Gen. Ins. Co.*, 448 F. Supp. 3d 1108, 1113 (D. Nev. 2020).

Here, Hightail sufficiently states a claim for breach of the implied covenant of good faith and fair dealing. Optimum argues that the claim must be dismissed because it is based on the same conduct giving rise to the breach-of-contract claim. I agree that there is some overlap in the factual allegations upon which the breach of contract and implied covenant claims are based. But this does not mean that the implied covenant claim cannot proceed. "The Federal Rules of Civil Procedures permit parties to allege claims that are hypothetical, in the alternative, or even inconsistent." *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 393 F. Supp. 3d 968, 983 (E.D. Cal. 2019) (first citing Fed. R. Civ. P. 8(d)(2), (3); and then citing *Molsbergen v. United States*, 757 F.2d 1016, 1018–19 (9th Cir. 1985). Therefore, to the extent that the implied covenant claim overlaps with the breach-of-contract claim, I find that the two claims are merely plead in the alternative and not impermissibly duplicative. And upon review of the implied covenant's allegations, I find that it sufficiently states a claim for relief and, in turn, survives the motion to dismiss.

**D. Hightail's unjust enrichment claim is dismissed.**

"Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (citation modified). "'Benefit' in the unjust enrichment context can include 'services beneficial to or at the request of the other,' 'denotes any form of advantage,' and is not confined to retention of money or property." *Id.*

Here, I find that Hightail has failed to properly plead an unjust enrichment claim because there is no dispute that an express, written contract existed between Hightail and Optimum. *See Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."); *see also Lipshie v. Tracy Investment Co.*, 566 P.2d 819, 824 (Nev. 1977) ("To permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles."). Because an express, written contract exists between the parties, they are precluded from bringing an unjust enrichment claim.

**E. Hightail sufficiently states a claim for fraud in the inducement.**

Under the FRCP, when a complaint alleges fraud, Rule 9(b)'s heightened pleading standard applies. Fed. R. Civ. P. 9(b); *see In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024). Rule 9(b) requires the complaint to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint's allegations must identify "the who, what, when, where, and how of the misconduct charged." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation omitted).

To establish fraud in the inducement, the plaintiff must prove five elements by clear and convincing evidence: (1) a false representation made by the defendant; (2) the defendant's knowledge or belief that the representation was false (or knowledge that it had an insufficient basis for making the representation); (3) the defendant's intent to induce the plaintiff to consent to the contract's formation; (4) the plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance. *See J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004).

Here, in pleading fraud in the inducement, I find that Hightail meets the Rule 9(b) standard. The amended counterclaim describes the misrepresentations that the individual counterdefendants made to "induce Hightail to continue providing services for Optimum

pursuant to the MSA." ECF No. 49 at 35. This is insufficient to state a claim for fraud in the inducement because the misrepresentations were allegedly made to induce Hightail to act under an existing contract, not to induce Hightail to consent to a new contract's formation. However, the allegations regarding the First Amendment are sufficient to state a claim for fraud in the inducement because they represent that Hightail relied on the counterdefendants' misrepresentations when consenting to the First Amendment's terms. They also show that this reliance caused Hightail to suffer monetary damages. Therefore, I find that Hightail states a claim for fraud in the inducement.

**F. Hightail's declaratory judgment claim is dismissed as duplicative.**

Optimum argues that Hightail's declaratory judgment claim should be dismissed because it is redundant to the breach of contract claim. I agree. Hightail's amended declaratory judgment claim states that the "parties' competing interpretations of the Amended Agreement present a concrete and immediate dispute regarding the amounts owed." ECF No. 49 at 39. But such a dispute will be resolved by way of the competing breach of contract claims. Courts consistently dismiss declaratory judgment claims for being duplicative of other claims or the relief sought in the prayer for relief. *See, e.g.*, *Hyphy Music, Inc. v. Virgin Music Grp.*, 2026 WL 1196010 (C.D. Cal. Apr. 23, 2026); *Leigh v. Salazar*, 2013 WL 1249824 (D. Nev. Mar. 26, 2013). Such is the case here. So, Hightail's declaratory judgment claim is dismissed as duplicative.

**G. Hightail's accounting claim is dismissed.**

Optimum does not dispute that Hightail sufficiently states a claim for accounting. In fact, Optimum concedes that both Hightail and Optimum are entitled to an accounting under the signed agreements. But Optimum argues that Hightail's accounting claim nevertheless fails because the individual counterdefendants did not sign the agreements, so they should not be forced to an accounting of their personal finances. However, this argument is irrelevant because "[a]n accounting is an equitable remedy, not an independent cause of action." *Cueto-Reyes v. All My Sons Moving Co. of LV.*, 2010 WL 11579989 (D. Nev. Apr. 5, 2010) (citing *Dairy Queen, Inc. v. Wood*, 369

U.S. 469, 478 (1962)). Thus, the "necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law." *Dairy Queen*, 369 U.S. at 478. Here, Hightail has an adequate remedy at law, so this claim fails.

**H. Hightail's conversion claim is dismissed.**

"Conversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006). "Yet, conversion generally is limited to those severe, major, and important interferences with the right to control personal property that justify requiring the actor to pay the property's full value." *Id.* "Further, conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000).

However, the economic loss doctrine generally "bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses.'" *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009). "Purely economic loss is generally defined as the loss of the benefit of the user's bargain, including pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) (citation modified).

Here, the economic loss doctrine bars Hightail's conversion claim because the converted property—that is, accounts receivables and monies—are purely economic. Because the converted property and remedy sought are exclusively monetary, Hightail's conversion claim impermissibly seeks to convert a general tort into a contract claim. This is what the economic loss doctrine is designed to prevent. Thus, Hightail fails to state a claim for conversion.

## VII. Hightail's motions for preliminary injunction (ECF No. 51) and for temporary restraining order (ECF No. 52) are denied.

Hightail moves for injunctive relief restricting Optimum from interfering with Hightail's debt collection pursuant to NRS 104.9607, arguing that Optimum's default under the MSA has put Hightail near business extinction due to financial crisis. ECF No. 51. It further argues that Hightail owns a perfected security interest in Optimum's accounts receivables, such that Optimum's interference with Hightail's attempts to recoup the money owed is unlawful. *Id.* Optimum opposes Hightail's requests for injunctive relief, contending that Hightail cannot show a likelihood of success on the merits because its operative claims have been dismissed. ECF No. 58. It also argues that Hightail cannot show irreparable harm because this is a money dispute, and Hightail's financial peril is a product of its own making—not Optimum's. *Id.*

### A. Legal standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (quoting *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal citations omitted)). The Supreme Court has explained that to obtain an injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Courts look to these same factors when ruling on a motion for a temporary restraining order. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (analysis for temporary restraining orders and preliminary injunctions "substantially identical").

Further the Ninth Circuit uses a "'sliding scale' approach to preliminary injunctions." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under that approach, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff

can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat*, 16 F.4th at 636 (quoting *All. for the Wild Rockies*, 632 F.3d at 1135) (citation modified). Courts use

**B. Discussion**

Here, upon review of the four *Winter* factors, I deny Hightail's motions for injunctive relief.

First, Hightail has not necessarily shown a *likelihood* of success on the merits; rather, it has merely stated claims sufficient to survive a motion to dismiss. *See supra.* Second, Hightail has not shown that it will suffer irreparable harm absent the injunctive relief because the injury is a financial one that can be remedied with compensatory damages. *See Goldie's Bookstore, Inc. v. Superior Ct.*, 739 F.2d 466, 471 (9th Cir. 1984); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). Third, the balance of equities is neutral here because both parties' injuries concern the other side's financial duties under the MSA, and these injuries can be adequately remedied through damages awarded during standard litigation proceedings. Fourth, for these same reasons, I find that the public interest does not weigh in favor of injunctive relief; side-stepping standard litigation proceedings, including a damages award, does not serve the public interest in this commercial collection dispute.

Because the four *Winter* factors do not weigh in favor of Hightail's requested injunctive relief, I deny its motion for a preliminary injunction and motion for a temporary restraining order.

**VIII. Conclusion**

IT IS THEREFORE ORDERED that the motions to compel and to stay the case **[ECF Nos. 22, 29] are DENIED.**

IT IS FURTHER ORDERED that the motion to dismiss the amended complaint **[ECF No. 38] is DENIED.**

IT IS FURTHER ORDERED that the motions for preliminary injunction and temporary restraining order **[ECF Nos. 51, 52] are DENIED**.

IT IS FURTHER ORDERED that the motion to dismiss first amended counterclaims **[ECF No. 54] is GRANTED in part**, as set forth in this order.

IT IS FURTHER ORDERED that the motions for reconsideration and clarification **[ECF Nos. 56, 57] are GRANTED**, as set forth in this order, so ECF No. 55 is vacated. The motion to dismiss docketed at **[ECF No. 41]** is now denied as moot.

IT IS FURTHER ORDERED that the show cause order **[ECF No. 67] is DISCHARGED.**

Dated: August 25, 2026



Cristina D. Silva
United States District Judge